PIKE COUNTY COLLIERIES COMPANY *v.* RICHESON.

[No. 13,069. Filed February 17, 1928.]

*White & Wright,* for appellant.
*John A. Riddle,* for appellee.

THOMPSON, J.—Appellee filed application for compensation for personal injuries alleged to have been received on November 13, 1926, by reason of an accident arising out of and in the course of his employment at appellant's strip mine. He alleged that while working he was accidentally struck by a missile which entered his left side and lodged in his liver.

The application was heard by a single member of the Industrial Board, who found that on November 13, 1926, appellee was in the employ of appellant at an average weekly wage in excess of $24; that on said date appellee received an injury because of an accident arising out of and in the course of his employment, of which injury appellant had notice and did not furnish medical attention; that, as a result of said injury, appellee was totally disabled from November 13, 1926, until January 3, 1927. Compensation at the rate of $13.20 per week for a period of six and one-half weeks was awarded appellee, and appellant was ordered to pay the necessary medical, surgical, hospital and nurses charges for the first sixty days following the accident. Appellant filed an application for review by the full industrial board, which board, by a majority of its members, affirmed the award.

Appellant's assignment of error is that the award is contrary to law.

The evidence shows that appellee was injured on November 13, 1926, at about 3:15 o'clock p. m., while working for appellant at one of its open coal mines; that he was standing on the ground, out in the open near the

tipple, when he was struck by a missile which entered his left side, and that appellee immediately felt a pain in his side and stomach; that neither appellee nor any of the other workmen near him knew whence the missle came; that there were several other workmen within fifty feet of appellee at the time of the injury; that there was an orchard about 100 steps from the place of the accident, but was somewhat obscured from appellee's view; that nobody was seen hunting in the vicinity, and no report of a gun had been heard; that appellee had had no trouble with anyone, and had no enemies that he knew of; that appellee was examined by appellant's doctor and then sent immediately to a hospital in Evansville where his wound was probed or cut into; that said missile was not recovered, but is still in appellee's body; that said wound had the appearance of a gunshot wound, and was presumed by the doctors to have been caused by a bullet fired from a gun; that appellee remained at the hospital twelve days, and was disabled from November 13, 1926, until January 3, 1927.

If there is any evidence in this case, or if any inference can be drawn from the evidence, which will sustain the award, then the award must be affirmed. Appellant, however, insists that the facts are such as will compel the court to say, as a matter of law, that appellee's injury did not arise out of his employment.

In the case of *Flucker* v. *Carnegie Steel Co.* (1919), 263 Pa. St. 113, 106 Atl. 192, the court said: "Where no facts appear indicating anything to the contrary, it may be presumed logically that an employee at his regular place of service, during his usual working hours, is there in discharge of some duty incident to his employment; and, when the dead body of an employee is found on the premises of his employer, at or near his regular place of service, under circumstances fairly in-

dicating an accidental death which probably occurred during the usual working hours of the deceased, the inference may fairly be drawn, in the absence of evidence to the contrary, that the employee was injured in the course of his employment; such is the case at bar. Of course, the burden is always upon the claimant to prove his case, and the tribunal charged with the duty of finding the facts must weigh and consider all attending circumstances, in order to determine how far they should prevail against presumptions arising out of other facts favoring the claimant, but when this course has been pursued, a controlling finding that an employee was killed in a particular manner, reasonably indicated by the circumstances shown in the underlying findings, cannot properly be held to be without support upon the record."

In *Brooks* v. *A. A. Davis & Co.* (1926), 124 Okla. 140, 254 Pac. 66, the court said: "Before the advent of the Workmen's Compensation Law, the workman himself carried the burden of his own injury and wreckage, or was thrown upon society as an object of charity, except in such cases as the workman was able to establish that his injury was the result of negligence of his superior. Of the many accidents to workmen, a very small percentage could be compensated on any theory of negligence, and even then such compensation was indirectly passed on to the patrons of the industry. Many accidents happened for unforeseen causes, many without any determinable cause. They were just things that happened with apparently nobody to blame, and yet a workman was maimed and scarred for life, power to earn a livelihood lessened or destroyed, either temporarily or permanently. A humanitarian idea developed in the minds of right-thinking human beings. The expense of repairs and replacements of inanimate parts of the general machinery of industry was spread to the

consumer, then why not spread the expense of repairs and the replacements of the necessary human portion of the general machinery of industry as well?

"The idea developed into the Workmen's Compensation Law, and whether good or bad, it is written. Every common-law right of the workman has been abrogated, and another right substituted, not governed by the common-law rules. To such workmen as could make recovery under common-law rules a burden falls, perhaps, but the scheme redounds to the general good of the great number of the animate units of the vast machinery of our industries. The written law says, in effect, to every unit of human machinery engaged in our industries: 'You can no longer invoke the rules of the common law to compensate your injuries.' Such a law becomes a farce and a failure if common-law rules may be invoked to thwart the spirit, purpose and intention of it; and take away the new right created by it. The injured workman can no longer use the common-law rules as weapons of offense to extract compensation for injuries sustained by him. It is not within the spirit, purpose and intention of the law to deny common-law rights to the injured employee, and yet be permitted common-law rules to be invoked by his adversary to defeat the spirit of the law. The whole spirit of the law is to require every industry and its patrons to assist in a reasonable manner to salvage the wreckage of its animate units of machinery that prosecutes the industry, and this spirit should prevail in matters arising before the State Industrial Commission in settling questions of compensation; and also such questions as are presented to this court for review."

In the case of *Swing* v. *Kokomo Steel, etc., Co.* (1919), 75 Ind. App. 124, 125 N. E. 471, it is said: "In determining the question now under consideration we must remember that the burden of establishing each fact necessary to a

legal award of compensation rests on the applicant, and that the proof by which such burden is discharged must be based on something more than mere guess, conjecture, surmise, or possibility. . . . Such proof, however, may be made by circumstantial as well as direct evidence. And the Industrial Board, in determining whether such burden has been discharged, may not only weigh the evidence but may also draw reasonable inferences from such facts as it deems established thereby. When the Industrial Board has discharged its duty in this regard, and has reached a conclusion as to the ultimate facts which have or have not been established, and has embodied such conclusion in a finding of facts as the statute requires, this court must accept the facts so found as true, unless the evidence is of such a conclusive character as to force a contrary conclusion. . . . However, in order to reach a contrary conclusion, we may not weigh the evidence, nor may we disregard any reasonable inferences which the Industrial Board may have drawn from the facts which the evidence tends to establish."

The Industrial Board found that appellee was injured while in the employ of appellant, and that said injury arose out of said employment. There was evidence submitted to the board that the missile which injured the appellee did not come from the outside or from the territory adjacent to the mine, and, under the facts as disclosed by the evidence, we hold that, as a matter of law, the Industrial Board could have reasonably inferred that the missile came from within the mine's territory.

The award is affirmed.

Enloe, J., dissents.